467 So.2d 548 (1985)
Naomi Lewis LEMON
v.
Joseph FEIN, et al.
Maurice FORTIN, et al.
v.
Joseph FEIN, et al.
Nos. CA-2174, CA-2271.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1985.
Rehearings Denied April 26, 1985.
Writs Denied June 17, 1985.
*550 Kenneth M. Carter, Herman, Herman & Katz, New Orleans, for plaintiff/appellee Naomi Lewis Lemon.
Harold J. Wheeler, DiRosa & Wheeler, New Orleans, for plaintiffs/appellees Maurice Fortin and Robert Vaucresson.
Gerard M. Dillon, Dillon & Cambre, New Orleans, for defendants/appellants Succ. of Joseph Fein, Jr., Joseph Fein Caterers, Inc. & Fireman's Fund Ins. Co.
Before LOBRANO, WARD and ARMSTRONG, JJ.
LOBRANO, Judge.
As a result of fire which originated in the premises located at 1515 Basin Street, the owners and tenant (appellees) of the adjacent premises (1519-21) brought the instant suit seeking recovery for the damages sustained by them as a result of the fire's spread to their building. Defendants in the suit are the owner of 1515 Basin Street, Joseph Fein, and his insurer, Firemen's Fund Insurance Co. (appellants). From an adverse judgment in the lower court, appellants have perfected this appeal specifying as error the trial court's finding of liability on their part, as well as the amount of *551 damages awarded. They further urge this Court that appellees' claim should be dismissed because of the language contained in the assignment and/or subrogation agreement executed in favor of their own insurer.

FACTS:
The basic facts of this case are relatively simple, however a review of the pertinent testimony is necessary. It is undisputed that the fire originated on the 2nd floor of 1515 Basin Street sometime prior to 9:35 p.m. on November 7, 1980. It is also undisputed that the fire spread to the adjacent building (1519-21) causing severe damage which ultimately resulted in a total loss. There is no question but that 1515 Basin did not have any type of smoke detectors or fire alarms.
Captain Joseph Kiff of Engine Seven firehouse, located about a block and a half away from the 1515 Basin Street property, testified he initiated the first alarm at 9:35 p.m. Within fourteen minutes after that, all six alarms (the maximum) were initiated. Upon reaching the burning premises Kiff testified that the fire was burning on the second floor, had broken through the roof and was advancing rapidly. Immediately he noted that the patrons of the bar located on the first floor were not aware of the fire as they were still dancing and music was still playing on the juke box. His first actions were to clear the building, and then proceeded with fighting the fire. Kiff's testimony, as well as others, is clear that after the roof burned for a considerable time the sidewalls collapsed causing the adjacent buildings to catch fire.
Roy Fauria, the father of the lessee of the barroom at 1515 Basin Street testified about the condition of the building.[1] He was familiar with the premises and was in the process of doing some remodeling work on the 2nd floor. It is clear from his testimony that the building was quite old and was in a state of disrepair. Weatherboards were missing from the side of the building nearest to appellees premises causing electrical wires to be exposed, there was a hole in the roof which apparently caused severe leakage through the second floor to the first floor whenever it rained. He stated that whenever it rained the lights in the building would go out for a while. He noted in particular that some of the casing had peeled off some of the wiring in the front upstairs part of the building. As will be seen further in this opinion, his testimony that there were two electrical meters in the building is of importance.
Appellees, Robert Vaucresson and Maurice Fortin, the owners of 1519-1521 Basin testified that they were also familiar with appellant's building. Fortin testified that the stairway going to the 2nd floor was cluttered with trash and old debris making passage almost impossible. Vaucresson testified that there was a storeroom upstairs with a lot of junk in it. He noted that he had seen bare wires in the front upstairs areas. That is, parts of the casing or insulation were missing so that "copper spots" could be seen. He too also testified as to the missing weatherboards on the side of the building, the tremendous hole in the roof, and the trash and debris in the stairwell.
Lester Bergeron, an arson investigator for the City of New Orleans testified (by deposition) that his initial report of November 7, 1980 did not specify a cause of the fire. However on his final report of November 21, 1980 he stated the cause of the fire to be arson. On cross-examination however, he stated he found no direct evidence to substantiate this. He based his opinion on the physical evidence that the fire had spread so rapidly which is not normal for an electrical fire, and that the lights were still on in the barroom downstairs while the fire was burning. He also testified about certain information concerning the alleged criminal background of certain individuals who may have wanted to seek revenge against the lessee and his father. However, this information constitutes *552 rank hearsay, and is totally inadmissible in these proceedings.
John Linder, Bergeron's supervisor testified that there was absolutely no evidence, either physical or documentary to substantiate a finding of arson as the cause of the fire. His opinion for the rapid spread of the fire was lack of notification. He felt that Bergeron had put arson in the report because he was unable to determine the cause of the fire.

LIABILITY
A review of the above testimony points to the obvious fact that there was no direct evidence as to the cause of the fire. Appellees base their claim on several theories. They argue that appellants are strictly liable under Article 2317 and Loescher v. Parr, 324 So.2d 441 (La.1976). Civil Code Article 2317 provides:
"We are responsible, not only for the damage occassioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of things which we have in our custody."
Without getting into a lengthy dissertation as to the applicability of this article to fire cases within the Loescher, supra, context, suffice it to say that Article 2317 does not apply in the instant case because there is ample proof that appellant had leased his premises and therefore did not have the required custody to make him responsible. See, Narcisse v. Fontcuberta, 359 So.2d 1342 (La.App. 4th Cir.1978).
Appellees also cite Article 2322 and a general negligence theory in support of their position. We find merit in this argument.
Article 2322 provides:
"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
In response to this argument appellants raise the question of burden of proof. They argue that there is simply no proof that a ruinous condition or defect caused the fire. This response brings us to the real issue of the case. That is, whether appellees have sustained their burden of proof.
This case is governed, as in any civil case, by a determination of the preponderance of the evidence. Preponderance of the evidence simply means "... evidence which as a whole shows that the fact or causation sought to be proved is more probable than not." Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621, 626 (1972). See also, Townsend v. State Department of Highways, 322 So.2d 139 (La.1975). Causation may be proved by direct or circumstantial evidence. The often cited guidelines of Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971) is most applicable in this case.
"In describing this burden of proof, the courts sometimes speak of proof to a `reasonable certainty' as to a `legal certainty'; or of proof by evidence which is of `greater weight' or `more convincing' than that offered to the contrary; or (in the case of circumstantial evidence) of proof which excludes other reasonable hypothesis than the defendant's tort with `a fair amount of certainty'. Whatever the descriptive term used, however, proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not." Id. 245 So.2d at 155.
Equally important in this evidentiary scheme is the doctrine of res ipsa loquitur. It is a rule of circumstantial evidence which applies when the facts shown suggest the negligence of the defendant as the most plausable explanation of the accident. King v. King, 253 La. 270, 217 So.2d 395 (1968). See also, Larkin v. State Farm Mutual Automobile Ins. Co., 233 La. 544, 97 So.2d 389 (1957). Thus, by this principle where properly applied, the circumstantial evidence indicates that the injury was caused by fault or negligence of a defendant, without the necessity of proving *553 the exact negligent act. Boudreaux v. American, supra. We emphasize that circumstantial evidence need not negate all other possible causes of injury. It suffices if the proof excludes other reasonable hypothesis only with a fair amount of certainty. Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395 (1963).
We are satisfied that appellees have submitted sufficient circumstantial proof that the cause of the fire was defective wiring so as to create the inference that defendant was at fault under Article 2322. See dissent of Dixon, J. in Latham v. Aetna Casualty and Surety, 377 So.2d 350 (La.1979). Appellants rebut this inference by attempting to prove another plausible explanation of the fire, arson. However, there simply is no proof of that theory. Their evidence on this point consists of Bergeron's opinion which is based primarily on inadmissible hearsay. His only substantive evidence of the rapid spread of the fire, and the lights still burning are not credible. It was proven that the downstairs area had a separate meter thus explaining why the lights were still on, and his own supervisor attributed the spread of the fire to lack of notification. Thus, appellants have not presented a reasonable hypothesis to exculpate them from fault. We emphasize that this opinion is not intended to place the burden of proof on a defendant to exculpate himself absent any substantial evidence inferring his fault. However, when the origin of a fire cannot be proved with exactness and a plaintiff presents sufficient evidence, either direct or circumstantial, excluding all other reasonable hypothesis except the defendant's fault, then the burden shifts to the defendant to prove otherwise.
Considering all of the evidence presented, we hold that it is more probable than not that the fire was caused by the fault of appellant in failing to repair the defective wiring.

SUBROGATION AGREEMENT ISSUE
Appellants argue that as a result of the $20,000.00 settlement appellees made with their insurer they executed a total subrogation or assignment of their rights thus precluding them from prosecuting this claim. The receipt, release and assignment executed by them contained the following:
"And in consideration of said payment the insured hereby assigns and transfers to the said Company each and all claims, rights and demands against any person, persons, corporations or property arising from or in connection with such loss or damage, and said company is subrogated in the place of and to the claims and demands of the insured against such person, persons, corporations or property in the premises who may be liable or hereafter adjudged liable for the burning, theft, destruction or damage to said property."
The language quoted above is admittedly different from that which is set forth in the standard fire insurance policy of Louisiana as described in La.R.S. 22:691. Under the subrogation provision of that statute it provides:
"SubrogationThis Company may require from the insured an assignment of all right of recovery against any party for loss to the extent therefore is made by this Company."
It is clear to this court that the legislature, by allowing an insurance company to become subrogated to their insured's rights, intended said subrogation to extend only up to the amounts actually paid. We hold that appellees' insurer could not become subrogated in an amount in excess of that which it paid. To hold otherwise would result in an unjust result. We appreciate appellant's arguments concerning the distinction between partial and full subrogation however we do not find them applicable to the instant case. Clearly we must look to the intent of the parties, as well as the legislature in reaching our result.

DAMAGES:
The trial court awarded damages to the appellees-owners of 1519-21 Basin Street as follows:

*554
Loss of Rents $10,400.00
Loss of Income-Cigarette
 Machine 1,300.00
Loss of Income-Music Box 2,600.00
Reconstruction
 Cost of Building $107,000.00
 Less Ins. Recovery 20,000.00
 ___________
Remaining Loss 87,000.00
 _________
 Total Loss $101,300.00

Appellants seek a decrease while appellees seek an increase.
We agree that in assessing damages the trial court has wide discretion and that "no mechanical rule can be applied with exactitude in the assessment of property damages...." Coleman v. Victor, 326 So.2d 344 (La.1976). However, it is equally true that the intent of the law is to place the injured party in the same position he was in prior to the accidentnot in a better position. Cenac v. Duplantis Moving & Storage Co., 407 So.2d 424 (La.App. 1st Cir.1981); Davis v. Roberts, 194 So.2d 772 (La.App. 1st Cir.1967).
It is apparent that in this case appellees are receiving what in essence is a new building, whereas prior to the fire they owned a much older building. Despite the various arguments espoused to the contrary by appellants, the trial court's conclusion of $107,000.00 as a replacement cost is correct. The various testimony reveals ranges from $49,060.00 to $160,000.00 and we find no abuse of discretion in the $107,000.00 figure. We do find that the trial court erred in failing to reduce that figure as to reflect a depreciation factor.[2] See, Cenac v. Duplantis Moving & Storage Co., supra, and Davis v. Roberts, supra. Mr. Jim Smith, the adjuster for appellees own fire insurer reduced his cost estimate by 40% to reflect depreciation. This depreciation factor is reasonable and appellees offered nothing to the contrary. We therefore will reduce the replacement costs of $107,000.00 by 40% to reflect depreciation. We find no other abuse of discretion in the awards to appellees-owners.
The trial court also awarded Naomi Lewis Lemon, appellee-tenant, the following amounts:

Loss of anticipated profits $30,680.00
Loss of Leasehold Improvements 4,000.00
Loss of Movable Property 9,467.00
Compensation for having to relocate,
 purchase new equipment,
 re-establish business, etc. 3,000.00
 __________
 Total $47,147.00

Appellants complain that the loss of anticipated profits is excessive and that it should be limited to a reasonable time to re-establish the business. The fire was November 7, 1980 and Mrs. Lemon's lease expired December 31, 1982. Although the lease did have a five year option, the court limited her loss to the expiration date of the primary term, that is, December 31, 1982. We find no abuse of discretion in that determination. Likewise, we find no abuse of discretion in the $3,000.00 award as a cost associated with re-establishing her business. Therefore, the award to Mrs. Lemon is affirmed.
Accordingly, for the reasons expressed herein, the judgment in favor of Maurice Fortin and Robert Vaucresson is hereby amended as follows:

Loss of rents $10,400.00
Loss of Income-Cigarette
 Machine 1,300.00
Loss of Income-Music Box 2,600.00
Reconstruction:
 Cost of Building $107,000.00
 Less: 40% depreciation 42,000.00
 Insurance recovery 20,000.00
 ___________
Remaining Loss 44,200.00
 __________
 Total Loss $58,500.00

The judgment in favor of Mrs. Naomi Lemon is affirmed. All costs to be borne by appellants.
AMENDED, AND AS AMENDED, AFFIRMED.
WARD, J., concurs with reason.
WARD, Judge, concurring.
I concur in finding Joseph Fein liable for the fire damage to his neighbor's property, *555 but I disagree with the majority's application of the theories of liability. I interpret Louisiana Civil Code Article 2322, cited by the majority, to provide solely for the premises owner's strict liability and not for liability based on negligence. Hence, reference to the doctrine of res ipsa loquitur is neither proper nor required. Under Article 2322 strict liability, the owner of a building in which a fire begins is answerable for resulting damages to neighboring property unless he exculpates himself by showing that the fire did not occur because of the ruin of his building. Keller v. Kelly, 378 So.2d 1006 (La.App. 4th Cir.1979), writ denied 380 So.2d 624 (La.1980); Broome v. Gauthier, 443 So.2d 1127 (La.App. 4th Cir.), writ denied 445 So.2d 449 (La.1984). Because the evidence does not exculpate Fein, as owner of the building, he is liable without fault.
NOTES
[1] The record is not clear whether Fauria was also a lessee of the entire building or only of the 2nd floor. We are satisfied that either he, or his son, or both had a lease on the entire building.
[2] The lower court did, however, in its well reasoned opinion, point out that with respect to all appellees the proper assessment of damages was replacement costs less reasonable depreciation.